IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SIALE ANGILAU,<br><br>Defendant. | ORDER AND<br>MEMORANDUM DECISION<br><br><br>Criminal Case No. 2:08-CR-431-TC<br>Criminal Case No. 2:08-CR-758-TC<br>Civil Case No. 2:12-CV-138-TC |

   Mr. Siale Angilau has filed a consolidated Amended Motion to Withdraw Plea and/or

Motion to Dismiss.  He seeks relief under both 28 U.S.C. § 2255 and Federal Rule of Criminal

Procedure 12(b).  At the heart of Mr. Angilau's consolidated motion is his contention that the

Government breached a plea agreement it had reached with him in an earlier case by bringing a

later RICO case against him.  Mr. Angilau asks the court to either vacate his guilty plea in the

earlier case or dismiss the charges in the RICO case.

   Along with his claim that the Government breached its plea agreement, Mr. Angilau

argues that court abused its discretion when it allowed the Government to dismiss the earlier

charges against him without prejudice in violation of Federal Rule of Criminal Procedure 48(a)

and that those charges must be dismissed with prejudice.  He also maintains that the

Government's RICO case violates the Double Jeopardy Clause and his due process rights.

Finally, he contends that if the previous plea agreement did not resolve all charges against him,

Mr. Angilau received ineffective assistance of counsel during the plea negotiations.

On January 25, 2012, the court held an evidentiary hearing on Mr. Angilau's consolidated motions.  Mr. Angilau and his previous defense counsel testified.

The court DENIES Mr. Angilau's Motion to Dismiss the RICO charges for the following reasons:

1.  The Government did not breach the plea agreement.

2.  The dismissal of the earlier charges without prejudice violated Rule 48(a) of the Federal Rules of Criminal Procedure and the Government's later justification for dismissal was not sufficient.  Accordingly, those charges are dismissed with prejudice.  But only one of the offenses alleged in the RICO indictment is the same as the dismissed charges.  The others are not.  Because they require different elements for proof, Counts I, XVII, and XVIII (as it relates to Count XVII) of the RICO indictment survive.  Only Count XVI must be dismissed.

3.  The Government did not violate the Double Jeopardy Clause or Mr. Angilau's due process rights.

4.  Mr. Angilau did not receive ineffective assistance of counsel.

## FINDINGS OF FACT[1]

The multiple indictments against Mr. Angilau arise chiefly out of events connected with two incidents: the robbery of a 7-Eleven store on July 24, 2007, and the assault of a federal officer on August 11, 2007.

---

[1] The following is taken from information contained on the dockets in case numbers 2:08-cr-431, 2:08-cr-499, and 2:08-cr-758, and from evidence presented during the January 25, 2012 evidentiary hearing.

**State Prosecution and Two Federal Prosecutions**

In connection with the second of these two events, the assault of a federal officer, Mr. Angilau was charged on March 24, 2008, in Utah State Court with obstruction of justice and failure to stop at the command of police.  Mr. Angilau pleaded guilty to both state charges and was sentenced to one to fifteen years and zero to five years to run concurrently.

During his change of plea and sentencing in State Court, counsel for Mr. Angilau and the court discussed the possibility of federal charges.  Both the State prosecutor and the U.S. Marshal representative agreed to recommend against federal charges.  (Change of Plea Tr. at 6:6-8, State v. Angilau, No. 071905854 (Third Dist. Court, State of Utah, Mar. 28, 2008).)  But the court explained to Mr. Angilau that "the State is committed to that recommendation, but again I just want you to know that that's a recommendation."  (Id. at 6:9-11.)

Despite this recommendation, a number of federal charges were brought against Mr. Angilau.  On July 2, 2008, a grand jury indicted Mr. Angilau, Viliami Loumoli, and Filikisi Hafoka on charges based on the robbery of the 7-Eleven store on July 24, 2007.  Mr. Angilau was indicted on one count of Hobbs Act Robbery (Count I) and one count of using or carrying a firearm during and in relation to a Hobbs Act Robbery (Count II).  The case was assigned the number 2:08-cr-431.[2]

Then, two months later, a grand jury indicted Mr. Angilau in a superseding indictment in another case on charges connected to the August 11, 2007 assault of a federal officer.  Mr. Angilau, along with Viliami Loumoli, was charged with assaulting a federal officer (Count I) and

---

[2]Although the indictment had twenty-four counts, Mr. Angilau was charged only in Counts I and II.

3

using or carrying a firearm during and in relation to the assault of a federal officer (Count II).
This case was number 2:08-cr-499.

While these charges were pending, the Government filed a superseding indictment in case
number 2:08-cr-431 on January 14, 2009.[3]  Counts I and II (the Hobbs Act Robbery and the
firearm charge) remained the same.  But two new counts were added against Mr. Angilau: assault
of a federal officer (Count III) and using or carrying a firearm during and in relation to the assault
of a federal officer (Count IV).  These charges were based on the same August 11, 2007 events as
the charges against Mr. Angilau in case number 2:08-cr-499, and to which Mr. Angilau pleaded
guilty in State Court.

Mark Gregersen, counsel for Mr. Angilau,  moved to sever the trial of Counts III and IV
in case number 2:08-cr-431, arguing that they were improperly joined and that trying them with
Counts I and II would be unfairly prejudicial to Mr. Angilau.  The court granted Mr. Angilau's
motion and ordered that Counts I and II be tried first, beginning on May 18, 2009, and that
Counts III and IV be tried immediately after.[4]

Two weeks before trial was to begin in case number 2:08-cr-431, the Government filed a
motion under Rule 48(a) of the Federal Rules of Criminal Procedure for leave to dismiss Counts
III and IV (the two charges based on the August 11, 2007 assault) against Mr. Angilau.  (Dkt. No.
141 in 2:08-cr-431.)  The Government's motion did not specify whether the dismissal would be
with or without prejudice and did not provide any reasons for the dismissal.  The court granted

---

[3] Several of the initial twenty-four counts were omitted because of pleas by Co-Defendants Viliami Loumoli and John Tuakalau.  As a result, the superseding indictment named only Mr. Angilau and Co-Defendant Filikisi Hafoka.

[4]The trial in case number 2:08-cr-499 had been continued.

the Government's leave to dismiss Counts III and IV.  (Dkt. No. 143 in 2:08-cr-431.)  The

Government filed a  Notice of Dismissal and dismissed Counts III and IV without prejudice.

(Dkt. No. 144 in 2:08-cr-431.)

      The  same day that the Government dismissed Counts III and IV,  Mr. Angilau's attorney,

Mark Gregersen, filed a request for clarification of whether the charges were dismissed with or

without prejudice.  (Dkt. No. 148 in 2:08-cr-431.)  He cited United States v. Derr, 726 F.2d 617

(10th Cir. 1984), pointing out, correctly, that the court must inquire why the dismissal was

without prejudice, which had not been done when Counts III and IV were dismissed.  He also

attached an email that he had sent to the Government expressing his concern about the

Government's intent to dismiss without prejudice and asking that the Government set forth its

reasons so that the court could determine if the reasons were sufficiently compelling.  The record

shows that the Government did not respond to Mr. Gregersen's request and that Mr. Gregersen

did not pursue resolution of his request.

      Mr. Angilau's trial on the two remaining counts in case number 2:08-cr-431 was to begin

on May 18, 2009.  But instead, on that day, Mr. Angilau pleaded guilty to both counts.  The

Government agreed to a twelve-year sentence under Rule 11(c)(1)(C) of the Federal Rules of

Criminal Procedure.

      Before Mr. Angilau was sentenced in case number 2:08-cr-431, Mr. Gregersen moved to

dismiss the superseding indictment in case number 2:08-cr-499 on August 6, 2009.  The reason

for his motion to dismiss was that the Government had dismissed Counts III and IV in case

number 2:08-cr-431.  Mr. Gregersen "noted that after the government's dismissal of case 2:08-cr-

431, defendant sought clarification (document 148) of whether the government could refile those

charges as to August 11, 2007."[5]  (Mot. Dismiss at 2, Dkt. No. 55 in 2:08-cr-499.)

The Government then filed a Motion for Leave to File Dismissal of the Indictment in 2:08-cr-499. (Mot. Dismiss, Dkt. No. 56 in 2:08-cr-499.)  The Government did not specify whether it was seeking to dismiss the superseding indictment with or without prejudice but stated that "[t]his motion is based on the fact that the charges against Angilau in the Indictment in this case were superseded into case number 2:08-cr-431." (Id.)  The court granted the motion but the order was silent as to whether the dismissal was with or without prejudice. (Dkt. No. 57 in 2:08-cr-499.)  The Government's Dismissal of the Indictment also did not specify whether the dismissal was with or without prejudice.  (Dkt. No. 58 in 2:08-cr-499.)

The court sentenced Mr. Angilau to twelve years of custody on August 31, 2009.

**The RICO Action, Case Number 2:08-cr-758**

On November 12, 2008, a grand jury returned an indictment in case number 2:08-cr-758, charging four defendants with a Hobbs Act Robbery of a Wal-Mart store and using or carrying a firearm during and in relation to that robbery.  A superseding indictment was filed on August 5, 2009, charging the same four defendants and an additional defendant with the same two crimes. Mr. Angilau was not named in either the Indictment or the superseding Indictment.  Then, on May 6, 2010, a few days short of one year after Mr. Angilau's plea of guilty in case number 2:08-cr-431, the Government filed a twenty-four count second superseding Indictment against sixteen defendants, including Mr. Angilau.  Mr. Angilau was charged with four counts: Count I,

---

[5] Mr. Gregersen also noted that the court "determined that the motion was not yet ripe, because the charges had not been refiled."  (Dkt. No. 55 in 2:08-cr-499)  But Mr. Gregersen did not indicate when the court had made this determination.

Racketeering Conspiracy; Count XVI, assault of federal officer based on the same August 11, 2007 events that were charged in case numbers 2:08-cr-431 and 2:08-cr-499 and to which Mr. Angilau pleaded guilty in State Court; Count XVII, assault with a dangerous weapon in aid of racketeering, again based on the August 11, 2007 events; and Count XVIII, using or carrying a firearm during and in relation to Counts XVI and XVII.  Count I included five overt acts allegedly committed by Mr. Angilau.  The overt act listed in paragraph 10.17 is the July 24, 2007 robbery of the 7-Eleven to which Mr. Angilau pleaded guilty in case number 2:08-cr-431.

**Mr. Angilau's Request for Relief**

On June 1, 2010, less than one month after the second superseding indictment was filed against Mr. Angilau in case number 2:08-cr-758, Mr. Angilau sent a *pro se* letter to the court regarding his belief that, in light of the RICO action (2:08-cr-758), the Government had breached the plea agreement in case number 2:08-cr-431.  (Dkt. No. 239 in 2:08-cr-431.)  The court treated this letter as a motion to withdraw the plea of guilty and ordered the Government to respond.  In its response, the Government argued that the court did not have jurisdiction to consider Mr. Angilau's motion unless it were filed as a motion under 28 U.S.C. § 2255.  (Id., Dkt. No. 241 in 2:08-cr-758.)

The court agreed with the government and, on July 26, 2010, the court denied Mr. Angilau's motion, citing Rule 11(e) of the Federal Rules of Criminal Procedure.  (Id., Dkt. No. 259 in 2:08-cr-758.)  Then, upon further consideration, on December 1, 2011, the court vacated its July 26 Order.  (Id., Dkt. No. 242.)  Michael Langford, current counsel for Mr. Angilau, filed an Amended Motion to Withdraw Plea And/Or Motion to Dismiss.  (Id., Dkt. No. 263 in 2:08-cr-431, Dkt. No. 1232 in 2:08-cr-758 .)  In the amended motion, which is now before the court, Mr.

Angilau has moved to withdraw his guilty plea in case number 2:08-cr-431, or, in the alternative, to dismiss the charges against him in case number 2:08-cr-758.  Mr. Angilau seeks relief under both Rule 12 of the Federal Rules of Criminal Procedure and 28 U.S.C. § 2255.

**January 25, 2012 Evidentiary Hearing**

On January 25, 2012, the court held an evidentiary hearing on the issues raised in Mr. Angilau's motion.  Mr. Angilau testified, as did Mr. Gregersen.  The Government offered four letters from Mr. Gregersen to Mr. Angilau as Exhibits 1A through 1D.  The letters were dated January 30, 2009 (Ex. 1A), March 2, 2009 (Ex. 1B), May 15, 2009 (Ex. 1C), and May 12, 2010 (Ex. 1D).  All of them were addressed and delivered to Mr. Angilau.

Mr. Angilau's Testimony

Mr. Angilau testified that after the Government filed the second superseding indictment in January 2009, he was aware of the possibility that he would be charged under RICO.  He also said that he thought that if he did not take the 12-year plea offer, the Government would seek RICO charges.  And he believed that the Government dismissed the assault charges because he took the plea deal.

When the RICO case was filed, Mr. Angilau was frustrated because he thought he had taken care of those charges by taking the plea offer.  He felt he had been misled by the Government and Mr. Gregersen.  When the court asked him whether he would have pleaded guilty had he known the RICO indictment was coming, he replied "no" and said that he would have gone to trial.

Mr. Gregersen's Testimony

When Mr. Gregersen testified, he unequivocally stated that he never told Mr. Angilau that the plea agreement was the final word on the July and August 2007 incidents.  He also firmly testified that he regularly discussed the possibility of future RICO charges with Mr. Angilau and that he told Mr. Angilau the assault charges could be filed again.

He said he filed the motion seeking clarification of the reasons for dismissing Counts III and IV without prejudice because he was concerned that the dismissed charges might be refiled. He testified that he had not received any express representation from the Government that the charges would not be refiled and he perceived a risk to his client.  He also emphasized that there were no "side agreements" with the Government surrounding the plea agreement or negotiations leading up to it.

Mr. Gregersen's communications with Mr. Angilau included four letters memorializing his discussions with Mr. Angilau.  Also, the Friday before Mr. Angilau pleaded guilty, Mr. Gregersen spent approximately two hours with Mr. Angilau discussing the case and the plea agreement.  According to Mr. Gregersen, they discussed the pending trial, the strengths and weaknesses of the case, the Government's settlement offer, and the effects of taking the offer. Mr. Gregersen then offered advice on whether to take the offer.  Mr. Gregersen also met with Mr. Angilau about the plea agreement the day the guilty plea was entered.  He testified that he was "extra careful" in his personal communications with Mr. Angilau because his client was "not a sophisticate."

Mr. Gregersen's letters to Mr. Angilau corroborate his declarations on the stand.

*January 30, 2009 Letter*

On January 30, 2009, Mr. Gregersen sent a two-page letter to Mr. Angilau at the Salt

Lake Metro Jail.  The letter discusses the possibility of a future RICO indictment and the first

plea offer the United States made to Mr. Angilau (that Mr. Angilau plead guilty to Counts I

through IV and receive a twenty-five year sentence along with the Government's promised

recommendation in a subsequent RICO prosecution that any sentence run concurrently with the

25-year sentence in case number 2:08-cr-431).

> I have another important matter to bring up with you.  In other notable Utah cases
> where the government alleged violent gang activity, the government has later
> prosecuted the defendants a second time, under RICO (Racketeering Influenced
> and Corrupt Organizations Act).  If the government establishes two crimes, under
> certain circumstances it can prosecute a group of defendants under the RICO
> statutes.  On January 22nd, I asked the prosecutor Veda Travis, whether the
> government is planning to bring a RICO case as to the defendants in this case, and
> she replied that yes, a RICO case is contemplated.  I explained to Veda my
> concern that if you plead guilty under the plea offer which has been made of 25
> years, that this may provide her with two such acts (predicates) under which a
> RICO action could be brought.  Veda explained to me that if you accept the plea
> offer in this case . . . then in the RICO case the government would ask that the
> sentence be concurrent with the 25 years from this case.

(Jan. 30, 2009 Letter from Gregersen to Angilau (Ex. 1A) at 1-2.)  Mr. Gregersen noted that he

did not receive anything more than a verbal assurance from Ms. Travis.

*March 2, 2009 Letter*

This letter memorialized a one-hour meeting Mr. Gregersen had with Mr. Angilau on

February 28, 2009.  Mr. Gregersen expressed his concern that the only way to be free of the

federal case would be to "win at trial" on both the 7-Eleven charges and the August 2007 assault-

related counts, but that a chance of winning was low given the evidence against Mr. Angilau

(including the guilty plea in State court).  He then explained that a conviction could result in a

sentence of 75 years.  He acknowledged that Mr. Angilau desired to reject the plea offer and go

to trial and that he would be discussing the issues again because "whichever decision you make,

[it] will affect your life for many years to come."  (Mar. 2, 2009 Letter from Gregersen to

Angilau (Ex. 1B) at 2.)

<em>May 15, 2009 Letter</em>

When this letter was sent, the Government had dismissed Counts III and IV without

prejudice.  Mr. Gregersen's motion for clarification had also been filed.  The letter was sent three

days before Mr. Angilau pleaded guilty to Counts I and II and reflected communications Mr.

Gregersen had with Mr. Angilau before the change of plea hearing.[6]  In the letter, Mr. Gregersen

wrote that even after accepting the plea offer of twelve years,

> you still face a possibility of additional prosecutions by the government,
> consisting of RICO charges, <u>renewal of the assault on federal officers charges</u>, and
> possible state prosecution for robbery.  By accepting the plea, my estimate is that
> this <u>may</u> serve to decrease the government's desire for retribution, <u>though this is
> unknown</u>.

(May 15, 2009 Letter from Gregersen to Angilau (Ex. 1C) at 1 (emphasis added).)  The letter

noted that, according to Mr. Angilau's request after the two-hour discussion at the jail,

> I made two telephone calls to the prosecutor.  First, I telephoned Bill Kendall at
> 2:45 p.m. and explained that we were close to settling, except that <u>you needed</u>

---

[6] The court received a letter from Mr. Angilau on January 31, 2012, in which Mr. Angilau explained that Mr. Gregersen's May 15, 2009 letter did not reach him until June 5, 2009. Evidently, Mr. Gregersen first sent the letter to Metro County Jail because he was unaware that Mr. Angilau had been transferred to the State Prison.  Because the May 15 letter does not contain new information but merely memorializes the conversation between Mr. Gregersen and Mr. Angilau on that day (the relevant section of Mr. Gregersen's letter begins with the words "As we discussed" (May 15, 2009 Letter from Gregersen to Angilau (Ex. 1C) at 1)), the court finds that it is not significant that Mr. Angilau was not actually in possession of the letter before his Change of Plea hearing on May 18, 2009.

11

assurance that the assault case (2:08cr499) would not be brought again. Mr. Kendall explained that the government would not accept this counteroffer. I clarified at that point, that we would be going to trial. The call then ended. After a passage of time, I telephoned Mr. Kendall per your desire, a second time, at 3:05 p.m., and related that although you would prefer to have a guaranty as to the assault charge, that you had decided to accept the plea and to take the 12 years. At this point Mr. Kendall related that we have a deal, and he will prepare the papers.

(Id. at 1-2 (emphasis added).)

*May 12, 2010 Letter*

After the indictment was returned against Mr. Angilau in the RICO case, 2:08-cr-758, which included the assault and gun charges relating to the August 2007 events, Mr. Angilau fired Mr. Gregersen. Mr. Gregersen subsequently wrote to Mr. Angilau:

You explained that you have concerns about me representing you as to the case, since you recall that I assured you that the government would not file RICO charges against you. Please recall that I have never made such a guaranty.

(May 12, 2010 Letter from Gregersen to Angilau (Ex. 1D) at 1.)

## CONCLUSIONS OF LAW

**Mr. Angilau's Motions Are Timely**

Motion to Withdraw Guilty Plea Under 28 U.S.C. § 2255

"After the court imposes sentence, the defendant may not withdraw a plea of guilty . . . and the plea may be set aside only on direct appeal or collateral attack." Fed. R. Civ. P. 11(e). Collateral attacks are subject to a one-year period of limitations. 28 U.S.C. § 2255(f). The time begins to run from the latest of several dates, including "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Id.

Here, the one-year period of limitations began to run from the date Mr. Angilau was

12

arraigned in the RICO action—the date on which the facts supporting the claim that the Government allegedly breached the plea agreement could have been discovered. Mr. Angilau was entitled to bring a collateral attack of the plea anytime between May 6, 2010 (the date Mr. Angilau was named in the second superseding indictment in 2:08-cr-758), and May 6, 2011. Mr. Angilau's letter of June 1, 2010, was well within the one-year limit.

<u>Rule 12 Motion to Dismiss</u>

Under Rule 12(b) of the Federal Rules of Criminal Procedure, a defendant must file a motion to dismiss that alleges a defect in instituting the prosecution before trial begins. Fed. R. Crim. P. 12(b)(3)(a). The court may also set a deadline for the parties to make pretrial motions. Fed. R. Crim. P. 12(c).

Here, the court imposed a motion deadline of December 15, 2011, in case number 2:08-cr-758. (Dkt. No. 668.) Mr. Angilau filed his Rule 12 Motion to Dismiss before trial began and before the motion deadline set by the court. Accordingly, his Motion to Dismiss is timely.

**The Government's Alleged Breach of the Plea Agreement**

The court applies a hybrid approach to plea agreement interpretation. To some extent, "[g]eneral principles of contract law define the content and scope of the government's obligations under a plea agreement." <u>United States v. VanDam</u>, 493 F.3d 1194, 1199 (10th Cir. 2007). But the court's "remedial decision-making is guided not merely by contract principles, but by 'considerations of fairness and the integrity of the judicial system.'" <u>United States v. Frownfelter</u>, 626 F.3d 549, 554 (10th Cir. 2010) (quoting <u>VanDam</u>, 493 F.3d at 1204). <u>See also, e.g.</u>, <u>United States v. Williams</u>, 198 F.3d 988, 993 (7th Cir. 1999) (contract principles used to interpret plea agreement are "tempered by concerns of equity and due process arising from the

unique context in which the [plea agreement] arises");  United States v. McGovern, 822 F.2d

739, 743 (8th Cir. 1987) ("A plea agreement . . . is not simply a contract between two parties.  It

necessarily implicates the integrity of the criminal justice system.").

 Against that backdrop of interpretation, the court, when evaluating whether the

Government breached a plea agreement, "should 1) examine the nature of the promise; and 2)

evaluate the promise in light of the defendant's reasonable understanding of the promise at the

time of the guilty plea."  United States v. Guzman, 318 F.3d 1191, 1195-96 (10th Cir. 2003).

Any ambiguities in the agreement are construed against the Government as the drafter of the

agreement.  VanDam, 493 F.3d at 1199.  The court then evaluates "the record as a whole to

ascertain whether the government complied with its promise."  Id.

 Mr. Angilau, who is asserting breach, must prove by a preponderance of the evidence that

the Government breached the plea agreement.  Allen v. Hadden, 57 F.3d 1529, 1534 (10th Cir.

1995).

 The Nature of the Promise

 According to the written Statement By Defendant in Advance of Plea of Guilty[7] (Mr.

Angilau's plea agreement) in case number 2:08-cr-431, Mr. Angilau agreed to plead guilty to

Counts I and II of the superseding indictment (Hobbs Act Robbery and § 924(c) gun charge

relating to the 7-Eleven robbery of July 24, 2007) in exchange for a sentence of twelve years (Mr.

Angilau was otherwise facing a sentence of at least fifteen years if convicted at trial on those

counts).  The plea agreement does not contain any reference to Counts III and IV (assault on a

_____

 [7]Dkt. No. 205 in 2:08-cr-431.

federal officer and accompanying § 924(c) gun charge relating to the August 11, 2007 events), which the Government dismissed without prejudice ten days before Mr. Angilau pleaded guilty. (See Dkt. Nos. 141, 143, 144 in 2:08-cr-431.)

Mr. Angilau alleges that the Government breached its promise when it returned a RICO indictment against him resurrecting the dismissed counts and basing racketeering and conspiracy claims in part on the July 2007 incident. But, as the Government points out, the August 2007 counts were not part of the superseding indictment at the time the plea was entered, and they are not mentioned anywhere in the plea agreement. (See Response of U.S. to Mot. Vacate Sentence Pursuant to § 2255 (Dkt. No. 262 in 2:08-cr-431) at 7; Supplemental Response of U.S. (Dkt. No. 266 in 2:08-cr-431) at 2 (contending that Government's motion for leave to dismiss the August 2007 charges "was not part of any agreement between the parties").) And during the change of plea hearing, Mr. Angilau represented that he had not been promised anything other than what was contained in the plea agreement.

But, in a motion to the court,[8] Mr. Angilau brought to light a statement made by the Government during Mr. Angilau's sentencing in case number 2:08-cr-431 that raised some doubt about the Government's proffered interpretation of the plea agreement. During the August 31, 2009 sentencing proceedings, the parties and the court discussed whether to make a portion of Mr. Angilau's twelve-year sentence run concurrently with the state sentence that Mr. Angilau was serving for his involvement in the August 2007 events:

> MR. GREGERSEN:    JUDGE, AS TO THE SENTENCE, WE HAVE DISCUSSED WITH THE GOVERNMENT AGAIN 12 YEARS. WE WERE

---

[8]See Ex. B to Angilau's Mot. for Discovery (Dkt. No. 1253-2 in 2:08-cr-758).

WONDERING IF THE COURT WOULD CONSIDER MAKING – –
ORDERING A PORTION OF THAT CONCURRENT WITH THE STATE
SENTENCE.  THE ARGUMENT FOR THAT IS THERE WAS A CHARGE – –
THERE WERE EVENTS OF AUGUST 11, 2007 CHARGED IN STATE
COURT TO WHICH MY CLIENT PLED GUILTY.  THEN FEDERAL
CHARGES WERE FILED IN A SEPARATE CASE FROM THIS ONE, WITH
THOSE TWO COUNTS BEING MERGED INTO THIS CASE FOR A TIME
AND THEN LATER DISMISSED.
        . . .

        THE COURT:   MR. KENDALL [OF THE U.S.] ARGUES IN HIS
MEMORANDUM THAT THE STATE SENTENCES ARE NOT RELATED TO
THIS OFFENSE.
        . . .

        MR. GREGERSEN: . . . THERE'S THE OTHER [STATE] CASE
ENDING WITH 5854, WHICH WE THINK WAS RELATED, NOT TO THE
TWO COUNTS UNDER WHICH MY CLIENT PLED GUILTY, BUT WAS
RELATED TO TWO COUNTS THAT WERE AT ONE TIME PART OF THIS
CASE.

        THE COURT:    IS THAT THE SHOOTING OF THE MARSHALS?

        MR. GREGERSEN:   YES.

        THE COURT:    BUT THEY'VE BEEN DISMISSED; CORRECT?

        MR. GREGERSEN: THAT'S CORRECT, JUDGE.

        THE COURT:    ALL RIGHT.  MR. KENDALL, ANYTHING OTHER
THAN WHAT YOU PUT IN YOUR MEMORANDUM?

        MR. KENDALL:    YES.  WE STILL OBVIOUSLY OPPOSE A
CONCURRENT SENTENCE. AND I THINK IF WE'RE LOOKING AT
PARITY ALSO WITH WHAT [CO-DEFENDANT] MR. HOFOKA
RECEIVED, AND HE DID NOT RECEIVE ANY CONCURRENT TIME,
NONE OF THE OTHER CODEFENDANTS DID.  AND I BELIEVE AS PART
OF OUR NEGOTIATED RESOLUTION ON THIS CASE OF 12 YEARS,
THAT TOOK INTO ACCOUNT THE FACT THAT WE HAD A DISMISSAL
OF THOSE OTHER CHARGES.

(Aug. 31, 2009 Sentencing Tr. (Dkt. No. 1253-2 in 2:08-cr-758) at 5-6 (emphasis added),

attached as Ex. B to Angilau's Mot. for Discovery (Dkt. No. 1253-2 in 2:08-cr-758).)

Before the January 25, 2012 evidentiary hearing, the court was concerned that the Government's statement that the "negotiated resolution" of twelve years "took into account" dismissal of Counts III and IV was evidence that there was more to the agreement than the written document reveals. The ambiguous statement could also serve as evidence corroborating Mr. Angilau's understanding of the agreement and his stated reason for agreeing to plead guilty. But the record established during the evidentiary hearing removed all doubt about the nature of the agreement and whether Mr. Angilau's understanding of the plea agreement was reasonable.

The testimony of Mr. Angilau's counsel, Mark Gregersen, along with the letters reiterating and documenting Mr. Gregersen's discussions with Mr. Angilau and the Government, made it clear that the Government promised nothing more than what is stated in the written plea agreement and that Mr. Gregersen told Mr. Angilau the extent of the Government's promises multiple times before Mr. Angilau agreed to plead guilty. (See, e.g., Exs. 1A-1D.)

Mr. Angilau's Understanding of the Plea Agreement

Based on the record, the court finds that Mr. Angilau's understanding of the agreement is not reasonable given what he was repeatedly told during plea negotiations.

Mr. Angilau contends that he understood the plea agreement to put "an end to prosecution for the 2007 offenses in exchange for pleading guilty and accepting major prison time." (Angilau's Reply to Response of U.S. (Dkt. No. 1248 in 2:08-cr-758) at 3.) According to Mr. Angilau's testimony at the January 25, 2012 hearing, he agreed to plead guilty in case number 2:08-cr-431 because the Government agreed not to pursue a RICO prosecution against him for the same conduct.

The transcript of the state court proceeding in which Mr. Angilau pleaded guilty to charges of obstruction of justice and failure to stop at the command of police sheds some light on the basis for Mr. Angilau's understanding of the federal plea negotiations.  On March 28, 2008, Mr. Angilau's counsel, James Valdez, described the negotiations surrounding Mr. Angilau's case resolution, explaining that the State of Utah agreed to recommend against federal charges for the August 2007 events and that the federal marshal who investigated the matter would also recommend that no charges be brought in federal court.  But the State court judge emphasized to Mr. Angilau that "when they talk about recommendations, that's all that they are.  They can't guarantee results.  Do you understand that?"  (Change of Plea Tr. at 4, State v. Angilau, No. 071905854 (Third Dist. Court, State of Utah, Mar. 28, 2008).)  To which Mr. Angilau replied, "That they can still pick it up?" (Id.)  Mr. Valdez and the Judge both reiterated that a recommendation did not guarantee that federal charges would not be brought against him.  When Mr. Angilau was asked whether he understood this, he said, "Yes." (Id. at 5.)  But when he was asked again whether he had questions about the state plea agreement, he said ambivalently, "Just about the federal, no." (Id. at 6.)   When his counsel, Mr. Valdez, was asked whether he believed that Mr. Angilau "freely, knowingly, and voluntarily has full knowledge of the consequences of his plea" in state court that day, Mr. Valdez responded, "Yes, Your Honor.  And as indicated in open court, Mr. Angilau's main concern was whether or not there [was] going to be a federal indictment." (Id. at 8.)

Although there may have been some ambiguity at the time Mr. Angilau pleaded guilty to the State charges, such ambiguity, from an objective standpoint, was removed by Mr. Gregersen's communications with Mr. Angilau, as evidenced by Mr. Gregersen's testimony and

thorough letters to Mr. Angilau, which are discussed in detail above.

Based on all of the evidence in the record, Mr. Angilau's stated understanding of the plea agreement is not objectively reasonable.

For the foregoing reasons, the court finds that Mr. Angilau has not satisfied his burden of showing that the Government breached the plea agreement.  Accordingly, his motion to dismiss or withdraw guilty plea based on an alleged breach is DENIED.

**Rule 12(b) Motion To Dismiss the RICO Action Based on Rule 48 and *Derr***

Under Rule 48(a) of the Federal Rules of Criminal Procedure, "[t]he government may, with leave of court, dismiss an indictment, information, or complaint."  Fed. R. Crim. P. 48(a) (emphasis added).

Because Mr. Angilau challenged the dismissal (i.e., he filed a motion for clarification of whether the charges were dismissed with or without prejudice), the Government must articulate valid reasons for dismissing Counts III and IV without prejudice.  United States v. Derr, 726 F.2d 617, 619 (10th Cir. 1984); see also United States v. Welborn, 849 F.2d 980, 984 (5th Cir. 1988) ("If, despite a defendant's objection, the trial court fails to require the prosecutor to submit sufficient reasons and dismisses the indictment without prejudice, the defendant retains the right upon reindictment to have the ruling reviewed.").  The Government may cure the procedural defect in the earlier case by providing reasons upon re-indictment.  Welborn, 849 F.2d at 985.

Rule 48(a) serves "an important interest as an information- and accountability-producing vehicle. . . . [T]here are independent rights, interests, and duties that a court may protect through using Rule 48(a) as a 'sunshine' provision that exposes the reasons for prosecutorial decisions."  In re Richards, 213 F.3d 773, 788 (3d Cir. 2000).  As noted by the Tenth Circuit,

> [c]ourts have recognized that a prosecutor can abuse his powers and harass a
> defendant by repetitively filing, dismissing and recharging him with a crime.  The
> rule is also intended to allow courts to consider public interest, fair administration
> of criminal justice and preservation of judicial integrity when evaluating motions
> to dismiss.

United States v. Strayer, 846 F.2d 1262, 1265 (10th Cir. 1988) (internal citations omitted).

The Tenth Circuit Court of Appeals made clear in United States v. Derr that before an
indictment may be dismissed under Rule 48(a) "the trial court at the very least must know the
prosecutor's reasons for seeking to dismiss the indictment and the facts underlying the
prosecutor's decision."  726 F.2d at 619.  This is necessary to honor the "primary purpose" of the
requirement that the Government obtain leave of the court: "to prevent harassment of a defendant
by a prosecutor's charging, dismissing, and recharging the defendant with a crime."  Id.  When
the Government fails to provide reasons for the dismissal, but the case is dismissed without
prejudice and the defendant is later indicted for the same conduct, dismissal of the second
indictment is, in some circumstances, the appropriate remedy.  Id.

In Derr, the defendant was initially indicted on six counts of bank embezzlement and six
counts of making false entries in bank accounts.  On the day that trial was to begin, the
Government moved to dismiss the indictment under Rule 48(a) but offered no reasons for the
motion other than that dismissal would "best meet the ends of justice."  Id. at 618.  Despite the
defendant's objections and without further inquiry, the district court dismissed the indictment
without prejudice.  Almost two and a half years later, the defendant was indicted and charged
with the same criminal conduct.  Before the same judge who had dismissed the first indictment,
the defendant moved to dismiss the second indictment, which the court granted.

On appeal, the Tenth Circuit affirmed the district court's dismissal of the second

indictment.  The court concluded that the "district court correctly determined that it abused its

discretion when it did not require that the government state reasons for its desire to dismiss the

original indictment" because "[i]f the record contains no reasons or facts explaining the trial

court's decision, the trial court's decision is effectively unreviewable."  Id. at 619.  The court

then considered whether dismissal of the second indictment was an appropriate remedy, and

concluded that it was:

> In the hearing on defendant's motion to dismiss the second indictment, [the Assistant
> U.S. Attorney] explained his position at the time of the earlier motion: "I was
> dissatisfied with the state of the investigation and the state the charges were in.  So,
> we moved to dismiss for the purpose of continuing the further investigation into the
> matter."  Unless the government could articulate a better reason for dismissal than
> this, we think that the trial judge would have had to deny the motion considering that
> it was made over defendant's objection and on the day trial was scheduled to begin.

Id.  Dismissal of the second indictment was not "unduly harsh" because "if the trial court had

initially ruled correctly and refused to dismiss the original indictment, the government's only

alternatives would have been to try a case in which it was obviously unprepared to proceed or to

move to dismiss the indictment with prejudice."  Id.

Keeping Derr in mind, the court's analysis must begin with a presumption that the

Government acted in good faith in moving to dismiss.  United States v. Salinas, 693 F.2d 348,

352 (5th Cir. 1982).  But the presumption is rebutted if the defendant shows lack of good faith on

the part of the Government.  Id.

Harassment of the defendant is grounds for dismissal with prejudice:

> [P]rosecutorial harassment involves charging, dismissing, and subsequently
> commencing another prosecution at a different time or place deemed more
> favorable to the prosecution.  The key factor in a determination of prosecutorial
> harassment is the propriety or impropriety of the Government's efforts to
> terminate the prosecution—the good faith or lack of good faith of the Government

in moving to dismiss.  The Government must not be motivated by considerations
"clearly contrary to the public interest."

<u>Salinas</u>, 693 F.2d 348, 351 n.15 (5th Cir. 1982) (internal citation omitted) ("It is obvious that the

public interest is not served by harassing a defendant."); <u>see also</u> <u>United States v. Palomares</u>, 119

F.3d 556, 558 (7th Cir. 1977) ("Rule 48(a) is intended to check the common law power of

prosecutors to enter a *nolle prosequi* before jeopardy attaches and then proceed to reindict the

defendant on basically the same charges and evidence.").

But because the prosecutor is presumptively the best judge of where the public interest

lies, the court should grant the Government's request "'unless the trial court has an <u>affirmative</u>

<u>reason</u> to believe that the dismissal motion was motivated by considerations contrary to the

public interest.'" <u>Salinas</u>, 693 F.2d at 352 (quoting <u>United States v. Hamm</u>, 659 F.2d 624, 631

(5th Cir. 1981) (<u>en banc</u>)) (emphasis added).  An "affirmative reason" includes a situation where

"the Government used Rule 48(a) to gain a position of advantage or to escape from a position of

less advantage in which the Government found itself as the result of its own election."  <u>Id.</u> at 353

(internal quotation marks and citation omitted).  For example, in <u>Salinas</u>, the court found bad

faith because the Government dismissed and obtained a second indictment "in order to get a

'better' jury, a jury more to its liking . . . rather than to utilize other avenues that were available."

<u>Id.</u> at 353.

In this case, the Government initially provided no reasons for seeking dismissal, other

than to say that dismissal was "in the interests of justice."  (Mot. for Leave of Court to Dismiss

Counts III-IV of Superseding Indictment (Dkt. No. 141 in 2:08-cr-431).)  And the Government

did not respond to Mr. Angilau's counsel's May 5, 2009 request for clarification about why such

dismissal should be without prejudice.

Nothing further happened on that issue until January 2012, when the court requested that the Government explain why it dismissed Counts III and IV in May 2009. The Government responded,[9] essentially explaining that the RICO investigation was not complete and that it was not prepared to go to trial against Mr. Angilau in case number 2:08-cr-431 on the assault and 924(c) charges.

But the record shows that the Government had enough evidence to prosecute Mr. Angilau on the August 11, 2007 incident, well before Mr. Angilau was indicted in case number 2:08-cr-758. First, Mr. Angilau pleaded guilty in state court on March 24, 2008 (the case was scheduled to go to trial on April 1-2, 2008). During the state plea proceedings, Mr. Angilau agreed that the following allegations were accurate:

> In this case, Judge, the State alleges that Mr. Angilau was the driver of a vehicle that fled from police officers. Those police officers happened to be federal marshals. The passenger in that vehicle [allegedly Viliami Loumoli] began shooting at the federal marshals. It's also alleged that in his driving away from there and later at the home where all these folks were apprehended, that Mr. Angilau was hiding in there, and did not indicate to the police who the actual – if there was one – actual driver was and/or who the shooter was. The police were able to identify the shooter. In addition to that the police also indicate and identified Mr. Angilau as the driver.

(State Plea Tr. at 9.) The State court found there was a factual basis for Mr. Angilau's guilty plea. That evidence was, for the most part, the same evidence the federal government would have used to prosecute Mr. Angilau during trial on the counts of assaulting a federal officer (Count III in 2:08-cr-431) and aiding and abetting in the violation of § 924(c) (Count IV in 2:08-

---

[9]The Government's response has been sealed for reasons that are evident from the document. The court has reviewed it *in camera* and will only discuss it here in general terms.

cr-431).  Second, the Government acknowledged that it had a viable case against Mr. Angilau on

the assault and 924(c) charges when it indicted him in September 2008 (2:08-cr-499) and then

again in January 2009 (2:08-cr-431).

The Government cites to United States v. Casados, 2011 WL 6300942, Case No. 11-cr-

00440-PAB (D. Colo. Dec. 16, 2011), in support of its position that it had justifiable reasons for

dismissing the charges in 2:08-cr-431 and 2:08-cr-499 and reindicting in 2:08-cr-758.  Casados is

distinguishable on its compelling facts.  At the time of dismissal in Casados, the Government

could not locate the alleged victim, who was on supervised release.  The alleged victim had

recanted her account of what occurred in the case, and the prosecution and court suspected that

the recanting may have been connected to the defendant's unauthorized calls (more than 200) to

the alleged victim while he was in custody.  In addition, the alleged victim had been arrested and

was to be prosecuted by the Government on facts arising out of the same incident that gave rise

to the case against the Defendant.  The situation created a conflict of interest, raised Fifth

Amendment issues, and imperiled the Government's ability to obtain the alleged victim's

cooperation.  The facts in Mr. Angilau's case do not raise the same issues as those in Casados

and are more akin to what occurred in Derr.

Here, the Government was prepared to go to trial on the assault charges.  A grand jury

had already indicted Mr. Angilau twice on the same charges.  More than a year before, Mr.

Angilau pleaded guilty to State charges arising out of the August 2007 assault incident.  By its

own admission, the Government was working to solidify additional evidence against Mr. Angilau

on the assault and gun charges and was still developing its RICO case against Mr. Angilau and

his co-defendants.  The Government did not want just a "viable" case against Mr. Angilau on the

assault charges.  It wanted a third chance to present a much stronger case against Mr. Angilau in

conjunction with the anticipated RICO indictment.  The court recognizes that the evidence the

Government was developing was not ready for introduction at trial in April 2008.  But there is no

claim that the Government had lost its ability to prosecute Mr. Angilau on the assault and gun-

related charges because additional evidence was not yet ready.  Delaying indictment in order to

develop and strengthen evidence, and choosing to pursue related charges in one prosecution

rather than on a piecemeal basis is legitimate, but that justification rings hollow when the same

entity has already indicted the defendant twice on duplicate charges arising out of events to

which the defendant pleaded guilty in another forum more than a year before.  The Government

made a conscious choice to indict Mr. Angilau twice and it should not be allowed to avoid that

choice because a potentially better avenue for conviction arose.  At some point, the Government

must live with its actions.

Under the circumstances of this case, the court finds that the Government has not

provided sufficient reasons to justify dismissal without prejudice.  The Government was, in

essence, trying "to gain a position of advantage or to escape from a position of less advantage in

which the Government found itself as the result of its own election [i.e., its indictment]."

Salinas, 693 F.2d at 353.  Accordingly, the court hereby dismisses Counts III and IV of case

number 2:08-cr-431 with prejudice.

**Motion To Dismiss the RICO Action Based on Double Jeopardy**

The Fifth Amendment provides that no person shall "be subject for the same offence to

be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  This guarantee protects against

three types of double jeopardy: "It protects against a second prosecution for the same offense

after acquittal.  It protects against a second prosecution for the same offense after conviction.
And it protects against multiple punishments for the same offense." Carolina v. Pearce, 395 U.S.
711, 717 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989).  In
Blockburger v. United States, 284 U.S. 299 (1932), the Supreme Court held that the test to
determine whether offenses are the same for double jeopardy purposes depends on whether each
statute requires proof of a fact that the other does not.  But the Blockburger test, which is a rule
of statutory construction, is not controlling when the legislative intent is clear from the face of
the statute or the legislative history.  Garrett v. United States, 471 U.S. 771, 779 (1985).

Mr. Angilau argues that he was denied the finality that is protected by the Double
Jeopardy Clause when the Government brought the RICO charges against him even though he
had already pleaded guilty to one of the predicate acts.  But the Tenth Circuit has held that a
"RICO conviction and sentence [can] be based upon a predicate crime for which the defendant
has already been punished."  United States v. Hampton, 786 F.2d 977, 980 (10th Cir. 1986); see
also United States v. Lane, 883 F.2d 1484, 1493 (10th Cir. 1989) (finding double jeopardy did
not bar prosecution in the reverse situation, in which the defendants had already been convicted
under RICO and were then charged with one of the predicate offenses).  In Hampton, the Tenth
Circuit examined the statutory framework and legislative history of RICO and found that
"Congress did clearly articulate an intent to permit cumulative punishment for substantive RICO
violations and the underlying predicate acts."  786 F.2d at 980.  Accordingly, the court found that
the subsequent RICO prosecution of the defendant was not barred by double jeopardy.

Other jurisdictions agree that double jeopardy does not bar a RICO prosecution that is
based on predicate acts for which a defendant has already been convicted.  See, e.g., United

States v. Deshaw, 974 F.2d 667, 671 (5th Cir. 1992) ("We have long held that the government may first prosecute a defendant for the predicate acts which form the basis of a RICO charge . . . and subsequently prosecute him for a substantive violation of RICO."); United States v. Levasseur, 847 F.2d 786, 800 (1st Cir. 1988) ("[T]he great majority of courts which have considered the issue have held that the Double Jeopardy clause does not prohibit simultaneous but separate—or even consecutive—indictments for a substantive crime and also for RICO."); United States v. Grayson, 795 F.2d 278, 283 (3d Cir. 1986) ("Clearly a RICO offense may be based in part upon a predicate offense for which the defendant has already been convicted and served a sentence.  Hence, successive prosecutions for a RICO offense and its underlying predicate offenses are not inconsistent with the double jeopardy clause.").

In case number 2:08-cr-758, Mr. Angilau was charged with one count of racketeering conspiracy under RICO.  While this charge is based on the 7-Eleven robbery of July 24, 2007, for which Mr. Angilau has already pleaded guilty in case number 2:08-cr-431, the charge is also based on additional robberies that occurred in 2002, 2004, and 2006.  Nor does Mr. Angilau's conviction for the 2007 robbery pose a double jeopardy bar for the RICO charge, given the Tenth Circuit's holding in Hampton as well as the widespread agreement among the courts that Congress intended to punish a separate type of behavior when it enacted the RICO statute.  Mr. Angilau's Fifth Amendment rights have not been violated by Count I of the RICO indictment.

Effect of Dismissal with Prejudice

Because the court held that the counts against Mr. Angilau in case 2:08-cr-431 have been dismissed with prejudice, the court must also determine whether the counts in case 2:08-cr-758 survive.  Count I deals with the July 24, 2007 and other 7-Eleven robberies and is unaffected by

27

the court's holding concerning Rule 48(a).  As set forth above, the Double Jeopardy Clause does not bar this claim.

Mr. Angilau also faces three other counts in the RICO indictment.  Count XVI charges Mr. Angilau with assault of a federal officer under 18 U.S.C. § 111(a).  Because this charge is identical to the charge that the government dismissed against Mr. Angilau in case number 2:08-cr-431, the Government is barred from pursuing Count XVI against Mr. Angilau.

But Count XVII, which accuses Mr. Angilau of assault with a dangerous weapon in aid of racketeering (a Violent Crime in Aid of Racketeering, or VICAR, charge) under 18 U.S.C. § 1959(a)(3), presents a different issue.  While this charge is based on the same events involved in Count XVI, it seeks to punish a different type of behavior; namely, the use of a weapon *in aid of racketeering*.  To determine whether this charge in 2:08-cr-758 is sufficiently different from the charges in 2:08-cr-431 that have been dismissed with prejudice, the court looks to Congressional intent and the Blockburger doctrine.[10]

---

[10]The Tenth Circuit has held that a dismissal with prejudice implicates double jeopardy principles.  See United States v. Mintz, 16 F.3d 1101 (10th Cir. 1994) (holding that the trial court properly dismissed a federal drug conspiracy charge in Kansas on the grounds that a prior dismissal with prejudice of a federal drug conspiracy charge in Florida implicated double jeopardy); United States v. Holland, 956 F.2d 990, 993 (10th Cir. 1992) ("we hold jeopardy attaches to the dismissal with prejudice of [a conspiracy charge].").

Other circuits have disagreed, finding that jeopardy does not automatically attach to a dismissal with prejudice, unless the defendant faced the real possibility of a conviction.  See United States v. Dionisio, 503 F.3d 78 (2d Cir. 2007) (holding that a dismissal with prejudice of a racketeering conspiracy charge did not implicate jeopardy because the defendant was never put at any risk of conviction); United States v. Stricklin, 591 F.2d 1112, 1120 (5th Cir. 1979) (holding that a dismissal with prejudice due to the lack of speedy prosecution did not trigger the attachment of jeopardy because the dismissal had "nothing to do with guilt or innocence or the truth of the allegations in the indictment"); United States v. Dahlstrum, 655 F.2d 971, 974 (9th Cir. 1981) (holding that an indictment's "dismissal is not equivalent to acquittal even if dismissal is 'with prejudice.'").  And several Tenth Circuit decisions, though not addressing dismissals

The language of the VICAR statute suggests a Congressional intent to punish behavior that is separate from the assault itself.  The statute sets out specific punishments for anyone who "murders, kidnaps, maims, assaults with a dangerous weapon . . . any individual <u>in violation of the laws of any State or the United States</u>, or attempts or conspires to do so" in return for "anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity."  19 U.S.C. § 1959(a) (emphasis added).  As the D.C. Circuit has noted, the quoted language suggests that Congress intended a penalty for a VICAR violation that is separate from and in addition to the penalty for violating any particular law of the United States.  <u>United States v. Mahdi</u>, 598 F.3d 883, 889 (D.C. Cir. 2010).  This reasoning aligns with the results of the <u>Blockburger</u> test, because the dismissed assault charge and the VICAR charge each "requires proof of a fact which the other does not."  <u>Blockburger</u>, 284 U.S. at 304.  VICAR requires a

---

with prejudice, have also focused on the risk of a determination of guilt for other types of pretrial dismissals.  <u>See, e.g.</u>, <u>United States v. La Cock</u>, 366 F.3d 883, 887 n.8 (10th Cir. 2004) (addressing whether jeopardy had attached when the district court dismissed the indictment following a motion to dismiss by the defendant and holding that since "the district court could not have decided Defendant's innocence or guilt, . . . jeopardy had not yet attached."); <u>United States v. King</u>, 581 F.2d 800 (10th Cir. 1978) (holding that jeopardy did not attach to the pretrial dismissal of a prosecutor's information); <u>United States v. Marchese</u>, 46 F.3d 1020, 1023 (10th Cir. 1995) (holding that a government appeal after the dismissal upon defendant's motion of a thirty-four count indictment did not implicate double jeopardy because the arguments on the motion "did not constitute the presentation of evidence for the purpose of determining guilt or innocence, which is 'the essence of the attachment of jeopardy.'" (quoting <u>United States v. Olson</u>, 251 F.2d 1126, 1228 (9th Cir. 1985)).

Regardless of whether jeopardy attached to the dismissal of charges with prejudice against Mr. Angilau in case number 2:08-cr-431, the court's analysis of the question remains the same.  The court applies the <u>Blockburger</u> test to determine whether the new charges require proof of different elements, and the court examines whether Congress intended to punish the type of activity described by the new charges separately from the punishment already prescribed for the type of activity described by the dismissed charges.

showing of participation in a racketeering activity which the assault charge does not; the assault charge requires proof that a federal officer was involved, which VICAR does not.  See 18 U.S.C. § 111(a); 18 U.S.C. § 1959(a)(3).  Because Congress intended a separate punishment for this racketeering activity, and because the racketeering charge is analytically distinct from the dismissed assault charge, the Government is not barred from bringing Count XVII against Mr. Angilau.

Count XVIII alleges that Mr. Angilau discharged a firearm "during and in relation to the crime of violence alleged in Counts XVI and XVII" in violation of 18 U.S.C. § 924(c).  (Second Superseding Indictment, Dkt. 114 in 2:08-cr-758.)  If the firearm count were only based on Count XVI (the assault charge), it would not survive because it would be identical to one of the charges that was dismissed with prejudice in case number 2:08-cr-431.

But Count XVIII is also based on the VICAR charge alleged in Count XVII.  As the court stated above, the racketeering offense charged under Count XVII differs from the assault offense charged under Count XVI because the two offenses require proof of different elements.  In United States v. Malone, 222 F.3d 1286 (10th Cir. 2000), the Tenth Circuit considered application of 18 U.S.C. § 924(c) where two predicate offenses were committed as part of one continuous course of conduct.  Mr. Malone was convicted of two predicate offenses (robbery and carjacking) along with two corresponding § 924(c) counts.  Id. at 1292-94.  Mr. Malone argued that he should have been convicted and sentenced on just one § 924(c) count because the two predicates were based on one continuous course of conduct.  Id.  Applying Blockburger, the court explained that "[i]t is undisputed that [robbery] and [carjacking] are directed at different types of conduct and require proof of different elements."  Id. at 1294.  In so doing, the court upheld the

30

district court's determination that two § 924(c) convictions were authorized under the language of § 924(c).  The holding accords with decisions in other circuits.  See, e.g., United States v. Fontanilla, 849 F.2d 1257 (9th Cir. 1988) (ruling that because murder and assault were properly charged as separate crimes, it was permissible to charge defendant with a separate firearm charge for each crime); United States v. Anderson, 59 F.3d 1323, 1334 (D.C. Cir. 1995) (requiring multiple convictions under § 924(c) to be linked to different underlying predicate offenses, but suggesting that the Government could have readily tied defendant's separate § 924(c) charges to both a conspiracy count and a possession count).

**Violation of Due Process Rights**

Mr. Angilau also maintains that the concepts of due process and fundamental fairness require that the RICO charges against him be dismissed.  Some courts have left open the possibility that prosecutorial vindictiveness or overreaching could be so severe that it violates the Due Process Clause.  See, e.g., United States v. Esposito, 912 F.2d 60, 67 (3d Cir. 1990).  Mr. Angilau has not provided any evidence that the Government's decisions were vindictive or that any overreaching rises to the level of severity that would violate the Due Process Clause. Accordingly, the court finds that Mr. Angilau's due process rights have not been violated.

**Ineffective Assistance of Counsel During Plea Negotiations**

Mr. Angilau's final contention is that if the plea agreement he entered into in case number 2:08-cr-431 did not resolve all charges related to the 2007 offenses, then he received ineffective assistance of counsel during plea negotiations.  Mr. Angilau contends that it was his intent to plead guilty only if the possibility of further prosecution was extinguished.

To succeed on this claim, Mr. Angilau must demonstrate two things under the governing

31

law set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).[11]

First, Mr Angilau must show that his former attorney's performance relating to his sentencing was deficient.  <u>Id.</u> at 687.  An attorney's performance is "deficient" if "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id.</u>

Second, he must show that he suffered prejudice as a result.  <u>Id.</u>  To establish prejudice, Mr. Angilau must show that "he would not have pled guilty had his attorney performed in a constitutionally adequate manner."  <u>Miller v. Champion</u>, 262 F.3d 1066, 1068 (10th Cir. 2001).  Mr. Angilau does not need to establish "that he actually would have prevailed at trial, although the strength of the government's case against the defendant should be considered in evaluating whether the defendant really would have gone to trial if he had received adequate advice from his counsel."  <u>Id.</u> at 1069.

<u>Defense Counsel's Performance was Effective</u>

At the evidentiary hearing, Mr. Angilau's former defense counsel testified that he had made clear to Mr. Angilau that the Government would not, and did not, agree that it would not later seek to bring additional charges against Mr. Angilau in exchange for his plea of guilty.  His testimony was confirmed by the four letters he sent to Mr. Angilau, Exhibits 1A, 1B, 1C, and 1D.  The letters also showed that Mr. Gregersen had carefully discussed with Mr. Angilau the pros and cons of accepting the Government's offer and that the final decision was made by Mr. Angilau.

---

[11]Although <u>Strickland</u> dealt with a death penalty case, the Court in <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985), held that the <u>Strickland</u> standards apply to challenges to guilty pleas.

The court sees no errors in defense counsel's performance.[12]

## ORDER

For the foregoing reasons, the court orders as follows:

1.      Mr. Angilau's Amended Motion to Dismiss the charges in case number 2:08-cr-758 (Dkt. No. 1232) is GRANTED IN PART AND DENIED IN PART.  Specifically, Count XVI is DISMISSED WITH PREJUDICE.  All other counts in 2:08-cr-758 against Mr. Angilau remain for trial.

2.      Mr. Angilau's Amended Motion to Withdraw Plea And/Or Motion to Dismiss certain charges against Mr. Angilau in case number 2:08-cr-431 (Dkt. No. 263) is GRANTED IN PART AND DENIED IN PART.  Specifically, Counts III and IV against Mr. Angilau in 2:08-cr-431 are DISMISSED WITH PREJUDICE.  His request to withdraw guilty plea is DENIED.

3.      Mr. Angilau's Motion for Discovery (Dkt. No. 268 in 2:08-cr-431 and Dkt. No. 1253 in 2:08-cr-758) is DENIED AS MOOT.

4.      Mr. Angilau's Motion to Vacate, Set Aside or Correct Sentence under § 2255 (Dkt. 1 in 2:12-cv-138) is DENIED.

SO ORDERED this 1st day of February, 2012.

BY THE COURT:

_Tena Campbell_

TENA CAMPBELL
United States District Judge

---

[12]Because Mr. Angilau has failed to show that his counsel's performance was deficient, the court need not address the prejudice prong of the Strickland test. Palacios v. Burge, 589 F.3d 556, 566 (2d Cir. 2009).